[Crim. No. 6787.   Second Dist., Div. Three.   Apr. 25, 1960.]

THE PEOPLE, Respondent, v. ROMULO GALLEGOS, Appellant.

Umann & Marks and Burton Marks for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David R. Cadwell, Deputy Attorney General, for Respondent.

VALLÉE, J.—By information defendant was accused of selling heroin on November 13, 1958. He was convicted by a jury. He appeals from the judgment sentencing him to state prison and from the order denying a new trial.

In October or November 1958 Officer Villalba of the Los Angeles Police Department, through another officer, met an informer called ''Johnny'' and told him that he (the officer) was going to make a buy. Johnny took Villalba to defendant's home, introduced him to defendant, and said, ''Joe wants to buy two grams.'' The officer gave defendant $40, and defendant gave him two grams of heroin.

About 6:50 p.m. on November 13, 1958, Villalba went to defendant's home again. As he walked toward the house, a couple of dogs started barking. Defendant came to a window and ''hollered, 'I will be right out.' '' Defendant came out and said, ''What is happening, brother? . . . What are you doing?'' Villalba answered, ''I am looking for junk. Do you

have any?" The word "junk" indicated heroin. Defendant said he had some. Villalba said he wanted two grams. Defendant asked the officer if he was a "user." Villalba said he was not, that he "was trying to make a little money." He gave defendant $40. Defendant told him to wait, went into the house, returned, and handed him 21 capsules of heroin. Villalba noticed the initials "R G" tattooed on the hand, wrist, or forearm of defendant.

On cross-examination Villalba testified that from July 27 to and including November 13, 1958, he had walked the streets in an undercover capacity looking for narcotic evidence; he had notes of his activities on November 13, 1958; the notes were in the narcotics office of the police building; he wrote the report immediately after the purchase from defendant on November 13; he read the notes out in the hall before he came into court; they were not his own notes; the notes he made were typed as a result of the purchase; he did not have the notes with him; he did not know whether the investigating officer, sitting next to the district attorney, had them; after he read the notes in the hall he gave them to Sergeant Cunning; the notes were with respect only to the purchase of November 13; he had no other notes to go by.

Officer Sanchez, called as a witness by defendant, testified he arrested defendant in his home on February 21, 1959; he made a search of the premises and found some prescription-type filled gelatin capsules of seconal behind the television set in the front room; they were of the same type as ordinarily contain heroin; he destroyed them; he did not find a syringe or needle; he had introduced Johnny to Villalba in October 1958; he had heard Johnny's last name but did not recall it; he had not seen him since October 1958, did not know where he lived, and had no information as to where he might be located.

Defendant denied ever having seen Villalba, denied ever having sold him any narcotic; admitted he had a tattoo "R G" on the webbing of his left hand since 1940 and that while he was in jail he had been trying to erase it; admitted that in 1950 he had been convicted of armed robbery in New Mexico.

Called by the People in rebuttal, Officer Sanchez testified that at the time of the arrest defendant told him he had been addicted to narcotics but "was trying to kick the habit" and that he had the seconal for that purpose.

After Officer Villalba testified with respect to the notes he made in connection with the incident of November 13,

1958, the following proceedings took place: ''MR. MARKS [attorney for defendant] : Your Honor, at this time I would request the Court to make an order that the notes which the officer apparently made at the time of the arrest and had transcribed and which are now in the possession of Officer Cunning be made available to the defendant. THE COURT: Is there any objection, Mr. Fitts? MR. FITTS [district attorney] : Yes, your Honor. There is no foundation for this sort of discovery proceedings so far. There has been no proof in any way to implement the defendant's case. MR. MARKS: Maybe we can build it up. THE COURT: Your motion at the present time is denied, Mr. Marks. MR. MARKS: Thank you.'' Counsel for defendant then conducted an exhaustive cross-examination of the officer but he did not repeat the request. Defendant first contends the court erred in denying him access to the notes. The court did not deny him access to the notes. On the record, it was incumbent on counsel to renew the request. Not having done so, he waived any right to complain on review. (*People* v. *Moore,* 43 Cal.2d 517, 523 [275 P.2d 485].) We must assume that if the request had been repeated, it would have been granted. (See *People* v. *Norman,* 177 Cal. App.2d 59, 64-65 [1 Cal.Rptr. 699].)

█ In the further cross-examination of Officer Villalba counsel for defendant asked him whether the notes he made on November 13 reflected the earlier incident of October or November 1958. The officer said, ''No.'' He was asked, ''Q. Are there any notes in existence which reflect this prior incident?'' The objection of the district attorney was sustained. Defendant asserts error. The ruling was clearly error. █ The defendant in a criminal case can, on proper showing, compel production of written statements of prosecution witnesses relating to the subject matter of their testimony where the statements are sought for the purpose of impeachment; and, in order to obtain production, the defendant is not required to show there is any inconsistency between the statement and the testimony of the witness. (*People* v. *Chapman,* 52 Cal.2d 95, 98 [338 P.2d 428], and cases cited in *People* v. *Norman, supra,* 177 Cal.App.2d 59, 63.)

█ On several occasions defendant ''attempted to introduce in evidence as a part of his defense that he was not living beyond his means as a person who was a seller of heroin might if he were not in fact a user.'' Objections to the evidence were sustained. Defendant claims error. There was evidence that defendant was not a user of narcotics. There was also

evidence that the amount Officer Villalba testified defendant sold to him was a "good" amount, and if he was not a user he might have been expected to make a good profit. ▉▉ All facts having rational probative value are admissible, unless some specific rule forbids. (*Dike* v. *Golden State Co.*, 125 Cal. App.2d 6, 11 [269 P.2d 619].) If evidence tends logically, naturally, and by reasonable inference to prove or disprove a material issue, it is admissible. (*People* v. *Jones,* 42 Cal.2d 219, 222 [266 P.2d 38].) It is not necessary that evidence should bear directly on the issue. It is admissible if it tends to prove or disprove a fact in issue, or constitutes a link in the chain of proof, or if it affords any reasonable inference as to the principal fact in dispute. (*Firlotte* v. *Jessee,* 76 Cal. App.2d 207, 210 [172 P.2d 710].) ▉▉ The evidence defendant sought to introduce might well have been admitted as tending to show a want of motive. However, we do not think the rulings were prejudicial. There was evidence defendant was married and had five children. He was at the time, and had been for nearly six years, employed by American Can Company. His wages were $100 for a 40-hour week. He purchased the home where he resided in 1952 at a cost of $6,500. Thus it appears that the evidence excluded would have been largely cumulative.

We have concluded, after an examination of the entire record, that the judgment and order must be affirmed since it does not seem reasonably probable that in the absence of the errors complained of a result more favorable to defendant would have been reached by the jury.

The judgment and order denying a new trial are affirmed.

Shinn, P. J., and Ford, J., concurred.