THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* BONIFACIO RIBAS MALDONADO, Defendant and Appellant.

No. 16545. Decided September 1, 1961.

*José Aulet* for defendant-appellant. *J. B. Fernández Badillo, Attorney General of Puerto Rico,* and *Héctor R. Orlandi Gómez, Assistant Attorney General,* for appellee.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

In the present case while a policeman testified as witness for the prosecution, counsel for the defense asked him whether he had made any statement before a public officer prior to the trial in relation to the facts of the case on trial. He requested the prosecuting attorney to produce a copy of the statement. The prosecuting attorney objected and the judge sustained him. The judge stated upon sustaining the prosecuting attorney's objection, that defendant had not laid the foundations to impeach the veracity of the witness' statement declaring that the proper thing "is not to ask him whether he made any statement or gave any testimony at some other time but to confront him directly with those statements and ask him whether he had made them or not." (Tr. Ev. 18-19.)

A number of decisions [1] of this Court have established that for a defendant to obtain a copy of a sworn statement made against him by a witness, the foundations for impeachment had to be previously laid while the witness was being cross-examined. The foundations are laid by asking him whether on any occasion he had made statements related to the facts about which he was testifying; and whether it was true or not that on that occasion he had made either this or that statement which was inconsistent with what he testified at the trial. Not until the bases are laid can the judge make a ruling as to defendant's request for the production of the sworn statement.

The last two decisions of this Court concerning the issue we are now considering are *People* v. *Superior Court; Ramos, Int.,* 80 P.R.R. 679 (1958) and *People* v. *Cortés,* 79 P.R.R.

---

[1] *People* v. *Díaz, alias Martillo,* 5 P.R.R. 197 (1904) ; *People* v. *Ramírez,* 41 P.R.R. 742 (1931) ; *People* v. *Coto,* 48 P.R.R. 143 (1935), and *People* v. *Garcés,* 78 P.R.R. 95 (1953), among others.

769 (1957). The former is no authority to determine the problem raised in the instant case. It is not, because the issue involved was defendant's right to obtain a copy of his confession prior to the trial. The latter is no authority either to decide this case. In *Cortés* the defendant complied with what the trial judge required should be established in the present case before considering whether or not defendant had a right to be given the statement made by a witness for the prosecution prior to the trial. We held that the trial judge erred in not ordering the prosecuting attorney to produce the statement.

In the present case, the question for determination is whether a defendant, upon examining a witness for the prosecution who has previously made a statement, may request him to produce said statement, without more, once it is established that the statement refers to the facts of the case.

■ Upon considering this question we must bear in mind what we stated in *People* v. *Superior Court, supra,* to the effect that the policy is "to give the accused ample opportunities to defend himself" since "one should not lose sight of the objective of judicial proceedings, which is the ascertainment of truth."

The question before us has been repeatedly submitted to the courts for consideration, but it was not until the decision of *Jencks* v. *United States*, 353 U.S. 657, 77 S. Ct. 1007, 1 L.Ed.2d 1103 (1957)[2] that interest was renewed in this phase of procedural law in criminal cases.

---

[2] Congress approved statute 18 U.S.C.A. 3500, in order to regulate the right to obtain government possessed documents. It was limited to statements and only when the witness who testified was cross-examined by the defense and with the object of attacking his veracity. This statute lessened the effectiveness of the *Jencks* case. *Palermo* v. *United States*, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959), although in the latter the court affirmed that its decision in *Jencks* did not go farther than that established by the statute itself. To the same effect see Goldstein, *The State and the Accused: Balance of Advantage in Criminal Procedure*, 69 Yale L. J. 1149-82 (1960).

 It is unnecessary to determine whether to deny defendant's request for a copy of the sworn statement in order to impeach the credibility of a witness for the prosecution violates the basic provisions of the due process of law. *Cf. Cicenia* v. *Lagay*, 357 U.S. 504, 78 S. Ct. 1297, 2 L.Ed.2d 1523 (1958); *Leland* v. *Oregon*, 343 U.S. 790, 72 S. Ct. 1002, 96 L. Ed. 1302 (1952). Margolin, *Due Process and Right of Confrontation—Jencks Act*, 58 Mich. L. Rev. 888 (1960). The issue involved in this case is not the minimum concepts of constitutional guarantees. There is more. It is the principle that justice can only be done when the whole truth is known. *State* v. *Johnson*, 28 N.J. 133, 145 A.2d 313 (1958) and *Hickman* v. *Jencks*, 14 Van. L. Rev. 865, 875 (1961). It is essential to our system of government that those procedural processes which make easier the ascertainment of the truth be established. In a true democracy every citizen has the right, upon being accused of a public offense, to be tried and sentenced by rules which guarantee him a fair trial in the broad sense of the word, since the state is not interested in presenting impediments to the knowledge of the facts and for the discovery of the truth. *People* v. *Moses*, 11 Ill. 2d 84, 142 N.E.2d 1 (1957). As stated in *People* v. *Riser*, 47 Cal.2d 566, 586, 305 P.2d 1, 13 (1956):

"Absent some governmental requirement that information be kept confidential for the purposes of effective law enforcement, the state has no interest in denying the accused access to all evidence that can throw light on issues in the case, and in particular it has no interest in convicting on the testimony of witnesses who have not been as rigorously cross-examined and as thoroughly impeached as the evidence permits. To deny flatly any right of production on the ground that an imbalance would be created between the advantages of prosecution and defense [3]

---

[3] The imbalance mentioned in the above citation refers to the advantages that, according to some courts, the accused would receive if he could obtain prior to the trial the evidence in the prosecution's possession. But that advantage clearly disappears when the sworn statement is produced during the trial while counsel cross-examines the witness.

would be to lose sight of the true purpose of a criminal trial, the ascertainment of the facts."

■ Now, then as to the requirement established by the authorities that the witness must be confronted with statements inconsistent with those he made in his direct testimony in order to obtain from the prosecuting attorney a copy of his testimony before the trial, it is one that the state courts have been eliminating since the decision in the *Jencks* case [4] and they order the district attorney to produce a copy of the statement when it has been determined that the same refers to the facts of the case on trial. Upon raising this question before the Supreme Court of California, the latter stated in *People* v. *Chapman*, 52 Cal.2d 95, 98, 338 P.2d 428, 430 (1959):

"In order to obtain production of the prior statement of a prosecution witness, a defendant is not required to show that there is any inconsistency between the statement and the testimony of the witness. (*Jencks* v. *United States*, 353 U.S. 657, 666-668 [77 S.Ct. 1007, 1 L.Ed.2d 1103].) As pointed out in the Jencks case, a requirement of proof of a conflict between the witness' testimony and his earlier statement would, in many cases, deny the accused the benefit of relevant and material evidence. Ordinarily, a defendant cannot show that a statement contains contradictory matters until he has seen it, and, if such a showing were a condition precedent to production, his rights would be dependent upon the highly fortuitous circumstance of his detailed knowledge as to the contents of the statement. For these reasons we disapprove any implication in *People* v. *Gallardo*, 41 Cal.2d 57, 67 [257 P.2d 29], and *People* v. *Riser*, 47 Cal.2d 566, 587 [305 P.2d 1], that the right of a defendant to obtain the production of a statement made by a witness for the prosecution depends upon a showing that the writing contradicts the witness' testimony."

---

[4] Notwithstanding the fact that *Jencks* was not binding on state jurisdictions, those of liberal tendencies have followed the philosophy which inspired it. The federal statute 18 U.S.C.A. 3500 does not require either that inconsistency be shown before the examination. It only requires that it relate to the matter.

To the same effect *People* v. *Estrada,* 54 Cal.2d 717, 355 P.2d 641 (1960) and *State* v. *Hunt,* 25 N.J. 514, 138 A.2d 1 (1958).

In *Campbell* v. *United States,* 365 U.S. 85, 92, 81 S. Ct. 421, 5 L. Ed. 2d 428, 434 (1961), the Federal Supreme Court itself states at 92:

"The Jencks Act limits access by defendants to such government papers as fit the Act's definition of 'statements' which relate to the subject matter as to which the witness has testified, *Palermo* v. *United States,* 360 U.S. 343 [79 S. Ct. 1217, 3 L. Ed.2d 1287 (1959)]. However, the statute requires that the judge *shall,* on motion of the defendant, after a witness called by the United States, has testified on direct examination, order the United States, for impeachment purposes, to produce any such 'statements.' To that extent, as the legislative history makes clear, the Jencks Act 'reaffirms' our holding in *Jencks* v. *United States,* 353 U.S. 657 [77 S. Ct. 1007, 1 L. Ed.2d 1103 (1957)], that the defendant on trial in a federal criminal prosecution is entitled, for impeachment purposes, to relevant and competent statements of a government witness in possession of the Government touching the events or activities as to which the witness has testified at the trial. S. Rep. No. 981, 85th Cong., 1st Sess., p. 3. And see H. R. Rep. No. 700, 85th Cong., 1st Sess., pp. 3-4. The command of the statute is thus designed to further the fair and just administration of criminal justice, a goal of which the judiciary is the special guardian."

Following the tendency mentioned in *People* v. *Superior Court, supra,* we should adopt as our policy in this jurisdiction to offer the accused an opportunity to obtain a copy of any statement made by a prosecution witness if he requests it after having testified and when he is called for cross-examination, and if the same relates to the facts in controversy in the case on trial.[5]

---

[5] Rule 105 of the Rules of Evidence for the General Court of Justice adopted by the Supreme Court and submitted to the Legislative Assembly on January 9, 1961 determines the procedure to obtain a copy of a sworn statement made by a witness for the prosecution in possession of the district attorney.

The situation in the present case falls squarely within that required by the policy we now adopt, for which reason the trial judge erred in denying appellant his request that the prosecution produce the sworn statement he had requested. And the error committed is reversible. In view of these conclusions it is unnecessary to discuss the other errors assigned.

The judgment appealed from is reversed and the case remanded for a new trial.

Mr. Chief Justice Negrón Fernández did not participate herein.